## City of Rockford v. Daniel W. Mead.

1. CONTRACTS—*Construction of.*—Under the provisions of a contract plaintiff had the option of furnishing three pumps, each of a capacity of 3,000,000 gallons a day, or two pumps, each of a capacity of 6,000,000 gallons a day, and in case he furnished the two 6,000,000 gallon pumps he was also to provide two engines, each arranged for and capable of operating one of said pumps. Not knowing how the pumps and engines he was purchasing would stand the test to which they were afterward to be subjected, under the contract, plaintiff purchased and installed three pumps and three engines, and when the tests were made, it was found that each of said pumps would pump over 6,000,000 gallons per day of twenty-four hours, and that each engine would operate one of said pumps. Plaintiff attempted to remove that part of the equipment not specified in the contract, but was prevented by defendant. *Held*, that the fact that plaintiff installed more pumps and engines of the capacity named than were called for by his contract, for the purpose of making the required tests, did not bind him to leave them all at the plant and give them to defendant. All that he was required in law to do was to furnish to the defendant city the number of pumps and engines of the required capacity, specified by the contract.

Assumpsit.—Appeal from the Circuit Court of Winnebago County; the Hon. CHARLES E. FULLER, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed January 27, 1903.

C. O. CARBAUGH, A. E. FISHER and C. W. FERGUSON, attorneys for appellant.

E. P. LATHROP and R. K. WELSH, attorney for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Prior to January 18, 1897, appellee, Daniel W. Mead, submitted to the city of Rockford a written proposition to increase the water supply of the city. This proposition included the sinking of a shaft, the construction of tunnels, the furnishing of pumps and engines and all mechanical appliances to take the water from wells or tunnels and deliver it to a pumping pit or reservoir, and the construction of a suitable building to protect the shaft and machinery. On the date named the city entered into an agreement with appellee, in accordance with the terms of said written proposition, a copy of which proposition was incorporated in and made a part of the contract. By the provisions of the contract appellee agreed that he would do the necessary work and supply materials and machinery for the development and delivery into the present pumping pit or reservoir of the city, of a supply of artesian water amounting to 5,500,000 gallons per day; that to do this he would sink a vertical shaft into the stratum of clay below the sand and gravel deposits to be connected with the various artesian wells existing, and such additional wells as appellee might sink to obtain the guaranteed amount of water; that at or near the base of the shaft he would erect three pumps, each of a capacity of 3,000,000 gallons in twenty-four hours, or two pumps each of a capacity of 6,000,000 gallons in twenty-four hours, to be operated by engines at the surface; that there should be three engines, each connected with and capable of operating one of the pumps, or two engines, each arranged for and capable of operating any two of the pumps, or if only two six million gallon pumps were furnished then there should be two

engines each arranged for and capable of operating one of said pumps; that the contract was made on the guaranty that appellee should furnish a system of water supply having a capacity of 5,500,000 gallons per day of twenty-four hours, and that the machinery should be capable of raising 6,000,000 gallons per day into the pumping pit or reservoir at the city water-works; that upon the completion of the contract and fulfillment of the guaranty, the city should pay appellee the sum of $22,000 and should thereafter pay him in addition, the sum of $8,000 for the shaft, tunnels and building; that upon the completion of the contract the same should be construed and regarded as a lease between the parties for two years, for the use of the engine, pumps, machinery and fittings of all kinds furnished by appellee for the operation of the pumping plant, and payment was provided to be made therefor, the price paid for rental to be applied on the purchase price upon terms stated in the contract; that the title and ownership of said engines, pumps and machinery, and all fittings of all kinds provided by appellee for said shaft and building, should be and remain in said appellee until the same should be purchased by the party of the first part and until payment in full by it of all sums and interest thereon payable, or which should become payable to appellee under the contract. Thereafter said parties entered into a supplemental contract, providing for connecting the shaft above mentioned with another well of the city, and they later entered into another contract, providing for sinking a new well and connecting the same with the shaft in question instead of making the connection contemplated in the first supplemental contract. The original and supplemental contracts also provided for certain extra sums or bonuses to be paid under certain conditions, the most important of which was to accrue to appellee in case the supply of water furnished by him should equal or exceed 7,000,000 gallons per day, pumped from all the wells. Appellee installed the system of water-works as proposed by the agreement, placed at the bottom of the shaft three pumps guaranteed to have a capacity of at least

3,000,000 gallons for twenty-four hours, and furnished three engines capable of operating the same. Upon a test of the pumps and engines, it was shown that each of the pumps had a capacity of 6,000,000 gallons in twenty-four hours. Soon after appellee learned of the capacity of the pumps, he notified the mayor that each of said pumps had 6,000,000 gallons capacity and that he proposed to remove one of the engines and pumps from the plant, but the mayor refused to permit the same to be removed. Afterward appellee laid the claim before the mayor, the water-works committee and the superintendent of water-works, and a proposition of settlement was made to the city council, but no settlement was arrived at. The city made all the payments provided for by the contract but refused to surrender the pump and engine in question or to pay an additional amount for the same as demanded by appellee, and this suit was brought to recover the value thereof.

Appellee filed a special count upon the contract between the parties, and the common counts, and there was a plea of the general issue. The trial resulted in a verdict and judgment for appellee for $6,000, from which the city appeals.

The points urged by appellant for reversing the case are, (1) that as appellee made his election of the machinery to be installed, and installed the same, he can not now renounce such election; (2) that appellee made a conditional sale of all the machinery installed, and appellant, having complied with the conditions of the contract, became the owner of the machinery so installed; (3) that the jury was improperly instructed on behalf of appellee; (4) that no contract of purchase or otherwise was ever made with appellee, for any pump or engine other than those specified in the original contract.

The only questions raised are involved in the construction of the contract. The entire proposition of appellee was embodied in the contract and made a part thereof. Under the provisions of the contract, appellee had the option of furnishing three pumps, each of a capacity of

3,000,000 gallons a day, or two pumps, each of a capacity of 6,000,000 gallons a day; and in case he furnished the two 6,000,000 gallon pumps, he was also to provide two engines, each arranged for and capable of operating one of said pumps. Not knowing how the pumps and engines he was purchasing would stand the test to which they were afterward to be subjected, under the contract, appellee purchased and installed three pumps and three engines, and when the tests were made, it was found that each of said pumps would pump over 6,000,000 gallons per day of twenty-four hours, and that each engine would operate one of said pumps. The fact that appellee installed more pumps and engines of the capacity named than were called for by his contract, for the purpose of making the required tests, did not bind him to leave them all at the plant and give them to the city. All that he was required in law to do was to furnish to the city the number of pumps and engines of the required capacity, specified by the contract. The conditional sale made by appellee to appellant could only include the pumps and engines provided for by the contract, and when appellant paid the sums specified by the contract, it only became entitled to such machinery as was provided by the terms thereof.

The instructions complained of by appellant adopt the theory that under the contract appellee had the right and option to furnish and deliver to appellant three 3,000,000 gallon pumps and engines, or two 6,000,000 gallon pumps and engines; and that two pumps of 6,000,000 gallons, each connected with two engines of sufficient capacity to operate them, would fulfill that part of the contract. We are of opinion, as above indicated, that this construction was correct and the instructions were properly given. In addition to the points suggested by appellant for the reversal of the case as above set forth, appellant makes the complaint in the course of its argument that over its objection, appellee was permitted to testify that when he had his conversation with the mayor in reference to removing one of the engines and pumps, the mayor told him he would

not permit any engine to be removed, and if the engines were of the capacity named he preferred the city should retain the one in question and pay appellee what it was worth. The testimony in regard to the refusal of the mayor to permit the property in question to be removed was proper, while the rest of the answer might properly have been excluded if a motion to that effect had been made. It did no harm to appellant, however, because the case turned solely upon the construction of the contract adopted by the court.

The judgment of the court below is affirmed.